# **DECLARATION**

I, Glen Sakamura, pursuant to Title 28, United States Code, Section 1746, under penalty of perjury and pursuant to the laws of the United States, state that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18. In May 2023, I became a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I am currently assigned to the DEA Atlanta Field Division, Greensboro Resident Office, Greensboro, North Carolina.

2. In 2012, I completed Basic Law Enforcement Training. In February 2013, I joined the Randolph County Sheriff's Office (RCSO) as a deputy sheriff assigned as a desk officer. In October 2013, I was assigned to the Patrol Division. My duties as a patrol officer consisted of responding to service calls, writing reports, and investigating various misdemeanor and felony offenses. Between December 2014 to January 2017, I was assigned to the RCSO Vice/Narcotics Unit. I conducted numerous undercover and controlled buys. I prepared and assisted in the execution of numerous search warrants. I am knowledgeable in the identification and collection of controlled substances and stolen property. Between January 2017 to March 2019, I was reassigned to the Patrol Division as a senior patrol officer. In March 2019, I was reassigned to the RCSO Vice/Narcotics Unit as a detective with the multi-agency Task Force, which is my current assignment.


GOVERNMENT EXHIBIT A

3. I have received extensive training in detecting and investigating crimes and collection and preservation of evidence. I am a certified Division of Criminal Information Operator and Field Training Officer. I have completed numerous hours of training related to criminal investigations and law enforcement techniques, including narcotics interdiction.

4. I have been involved in hundreds of drug investigations and cases at local, state, and federal levels. Through my training and investigative experience, I have gained significant knowledge in the field of drug law enforcement. I have learned the techniques and methods utilized by drug traffickers in negotiating, procuring, packaging, financing, and distributing illegal drugs. I am familiar with the methods used by drug traffickers to maintain records manufactured from the sale of illegal controlled substances and the method in which they launder and conceal the proceeds from the sale of illegal controlled substances.

5. This Declaration is made in support of a Verified Complaint of Forfeiture of $40,500.00 in U.S. Currency that was seized from Karina SANCHEZ-GOMEZ on March 9, 2023, in Asheboro, North Carolina.

6. The facts and circumstances contained in this Declaration are based on both my knowledge and experience, and on information provided by other law enforcement officers who participated in the investigation described below. This Declaration does not set forth all facts known to me or other law enforcement officers concerning the investigation.

7. Based on the facts set forth below, there is probable cause to believe the

$40,500.00 in U.S. Currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

8. Through use of an undercover officer (UC), whose identity is known but not disclosed here, law enforcement officers knew that the subject of the investigation (the Subject), whose identity is known but not disclosed here, was to deliver, or arrange to deliver, two (2) kilograms of cocaine on March 9, 2023, at around 1:00 p.m., to a predetermined meeting location in Wake County, North Carolina.

9. The Subject was known to reside at in an apartment on Hammer Avenue in Asheboro, North Carolina, and to drive a Nissan Maxima sedan. The Subject was also known to work at a factory located at Dorsett Avenue also in Asheboro.

10. On the morning of March 9, 2023, law enforcement officers with the DEA, RCSO, and Asheboro Police Department (APD) conducted surveillance in the areas of Dorsett Avenue and Hammer Avenue in Asheboro, North Carolina, while deputies with the Wake County Sheriff's Office (WCSO) conducted surveillance of locations in Wake County, North Carolina.

11. Officers located the Nissan sedan associated with the Subject in the parking lot of the factory on Dorsett Avenue, in Asheboro. At approximately 8:55 a.m., the Subject exited the factory and walk towards a white Dodge Challenger. The Subject then entered his Nissan sedan and drove to his apartment on Hammer Avenue and entered the apartment at approximately 9:00 a.m.

12. At approximately 9:20 a.m., the Subject left the apartment and drove back to the factory in the Nissan sedan. When he arrived minutes later, the Challenger was no

3

longer at the factory. Shortly thereafter, the Challenger returned to the factory parking lot. Around the same time, the Subject exited the factory and entered the Challenger and sat in the front passenger seat. After approximately two minutes, the Subject and the driver exited the white Dodge Challenger and entered the factory.

13. At approximately 9:51 a.m., law enforcement observed a Hispanic male and a Hispanic female leave the apartment on Hammer Avenue and get into a white Honda Civic coupe. At this time, surveillance did not continue on the Honda Civic.

14. At approximately 12:00 p.m., law enforcement observed the Subject outside the factory talking on a cell phone. Shortly thereafter, the Subject got into the white Dodge Challenger. Then, the same male seen previously driving the Challenger exited the factory and also got into the vehicle. The Challenger then traveled to the Boost Mobile phone store where the driver entered the store, and shortly after, left carrying a plastic bag. The Challenger then traveled to a grocery store on Dixie Avenue in Asheboro, North Carolina. At approximately 12:07 p.m., the Subject entered the business and minutes later, exited carrying a white food bag, got back into the Challenger, and returned to the factory.

15. At around this time, the Subject advised the UC that the cocaine still would be delivered to the predetermined location in Wake County, North Carolina, at around 1:00 p.m., as planned. Given that the Subject was too far from the meeting location to arrive in time, law enforcement concluded that the Subject was using a third party to deliver the cocaine. Shortly after 1:00 p.m., the Subject advised the UC that the cocaine had arrived at the meeting location and would be found in a white Honda sedan.

4

16.     WCSO deputies surveilling the meeting location in Wake County, North Carolina did not observe a white Honda vehicle in the area. However, they did observe a gray Volvo SUV pull up to the meeting location at around the time of the Subject advised the UC that the cocaine had been delivered. The deputies observed a Hispanic female operating the vehicle while talking on a cell phone. Based on communication between the UC and the Subject, and on observations from investigators in the area, the deputies concluded that the Volvo SUV likely was involved in the delivery of cocaine.

17.     At approximately 1:18 p.m., WCSO deputies conducted a traffic stop of the Volvo SUV. Deputies identified the driver as Edith Yessenia Flores MOLINA. During the stop, law enforcement deployed a narcotics K-9 who positively alerted on the vehicle. Deputies conducted a probable cause search of the vehicle and found approximately two (2) kilograms of suspected cocaine. Deputies arrested MOLINA and she was charged with state drug offenses. The suspected cocaine was transported to WCSO and placed into the evidence vault awaiting submission to the City-County Bureau of Identification lab in Wake County, North Carolina.

18.     Shortly thereafter, at approximately 1:38 p.m., in Asheboro, North Carolina, law enforcement officers observed the aforementioned white Honda Civic coupe pull into a parking lot near the apartment on Hammer Avenue. The female Hispanic observed travelling in the Honda earlier in the day got out of the vehicle, walked across a field, and entered the apartment empty handed. Shortly thereafter, the same female Hispanic exited the apartment carrying a black handbag and returned to the Honda Civic. Law enforcement officers followed the Honda and observed that the female passenger

5

speaking on a cell phone during this time.

19. At around 1:56 p.m., RCSO Detective K. Gabby initiated a traffic stop on the Honda Civic on US 220 Business for speeding. Det. Gabby identified the driver of the vehicle as INS, and the passenger as Karina SANCHEZ-GOMEZ. The occupants advised Det. Gabby that passenger Karina SANCHEZ-GOMEZ is the mother of the driver, INS. SANCHEZ-GOMEZ is known to reside at the apartment on Hammer Avenue with the Subject, and is believed to be the Subject's girlfriend.

20. In 2021, SANCHEZ-GOMEZ was adjudged guilty of Conspiracy to Distribute and Possess with Intent to Distribute Heroin by the United States District Court for the District of New Jersey and sentenced to 24 months in prison and 3 years of supervised release upon her release from prison (Criminal Case No. 1:20CR391-1; Doc. # 25). SANCHEZ-GOMEZ is currently being supervised by the United States Probation Office of the Middle District of North Carolina (Criminal Case No. 1:23CR130-1).

21. RCSO Lt. E. Wilson and Det. J. Chapman, with his police canine, responded to assist with the traffic stop. Det. Chapman deployed his police canine (K-9 Frank) for a free-air sniff around the Honda Civic. Det. Chapman observed a change in behavior once K-9 Frank reached the open front driver's side window. Det. Chapman also observed behavior changes when K-9 Frank reached the trunk area and the passenger side of the vehicle. These changes in behavior consisted of a hard head snap and breathing heavily. Det. Chapman observed K-9 Frank come to his final indication of a sitting position. K-9 Frank then laid on the ground with his body excessively shaking. Det. Chapman advised Det. Gabby that K-9 Frank had alerted to the presence of narcotics in

the vehicle.

22. Det. Chapman has been employed with the RCSO since 2016. Det. Chapman has been a shift supervisor with the Patrol Division since May 2023. He previously was assigned to the Criminal Interdiction Unit for 3 years. Det. Chapman has investigated hundreds of breaking and entering cases, drug-related offenses, larcenies, robberies, sexual offenses, and other related felony violations, and has recovered thousands of dollars' worth of property. These investigations have led to the arrest of many felony violators. Det. Chapman has been involved in numerous drug seizures of controlled substances and is familiar with the investigations of drug dealers, drug users, and people committing burglaries and larcenies and their activities in and around Randolph County. Det. Chapman has led and assisted in the investigation of numerous drug-related offenses and is knowledgeable in the identification and collection of controlled substances during these incidents.

23. Det. Chapman is currently a canine handler, having been assigned his first police canine in March 2020. He has completed 110 hours of Canine Handler School under the supervision and direction of nationally certified canine trainers at High Point Canine Solutions, 200 hours of Canine Handler School under the supervision and direction of nationally certified canine trainers at Houston K9 Academy, 16 hours of K-9 Decoy training at Rowan Cabarrus Community College, 8 hours of K-9 Law at Randolph Community College, 40 hours of High-Risk Apprehension under the supervision and direction of nationally certified canine trainers at Southern Police Canine Inc., 40 hours of Advanced Canine Utilization and Problem Solving at Rowan Cabarrus Community

College, 24 hours of Advanced K9 Training at K9 Law & Order, 174 hours of North Carolina Department of Justice Detention School, and 60 hours of Land Search Field Team Member Training through Randolph Community College.

24. In August 2021, K-9 Frank was assigned to Det. Chapman. K-9 Frank is a male Malaherd (Belgian Malinois/German Shepherd mix), bred specifically for keen senses and an ability to be trained to detect the odor of controlled substances. Det. Chapman and K-9 Frank attended a handler training course that consisted of 200 hours of instruction at Houston K9 Academy. After successful completion of training Det. Chapman and K-9 Frank were entered into service with the RCSO. K-9 Frank, through his training, has been imprinted on the odors of heroin, cocaine, crack cocaine, MDMA, and methamphetamine. K-9 Frank was certified by The National Narcotic Detector Dog Association Incorporated on September 16, 2021, and has successfully been certified every year since that date.

25. During his training and certification periods, K-9 Frank sniffed many packages, parcels, vehicle exteriors, and luggage. Several of the packages and vehicles contained and/or emitted the odor of a controlled substance. When K-9 Frank comes to his final indication, K-9 Frank either sits on his hind quarters or lays down, indicating and/or alerting the handler to the presence of an odor of a controlled substance that he is trained to find. K-9 Frank is trained to "passively alert" after detecting the odor of narcotics for which he has been trained. This "passive alert" consists of a physical reaction which ultimately ends with K-9 Frank in a sitting and/or laying position. K-9 Frank also exhibits various mental and physical reactions which are noticeable to Det. Chapman

8

which include becoming possessive of an area, refusal to leave an area where the odor of narcotics is detected, and changes in his breathing rate and sniffing patterns. Det. Chapman has documented that when K-9 Frank alerts, narcotics have been present in an overwhelming majority of the cases and training deployments. Since the initial training and certification periods, K-9 Frank has continued to sniff many packages, parcels, vehicle exteriors, and building interiors. Det. Chapman has continued to record on training deployments that when K-9 Frank alerts to any of these described items, narcotics have been present in majority of the cases.

26. After Det. Chapman advised officers that K-9 Frank had alerted to the presence of narcotics in the white Honda Civic coupe, officers conducted a probable cause search of the vehicle. During the search, they located a black leather or vinyl bag containing bulk U.S. Currency in the rear floorboard of the vehicle. The U.S. Currency was organized in large stacks folded in half, which is a way proceeds of illegal drug sales are commonly stored.

27. After discovery of the U.S. Currency, DEA Special Agent (SA) J. Hughes responded to the scene and seized the U.S. Currency. SA Hughes then transported the U.S. Currency to the DEA's high-value vault pending official count.

28. Due to a language issues, APD Det. Mendez, who is fluent in Spanish, also responded to the traffic stop. Det. Mendez asked SANCHEZ-GOMEZ about the U.S. Currency found in the vehicle. SANCHEZ-GOMEZ stated that she obtained the money on the previous day (March 8, 2023) from the sale of land. SANCHEZ-GOMEZ stated that she was currently looking to purchase a truck with the money, although neither she

nor her son hold a North Carolina driver license.

29. SANCHEZ-GOMEZ then gave written consent to search her apartment, which is the aforementioned apartment on Hammer Avenue, as well as her two cell phones. SANCHEZ-GOMEZ then travelled with law enforcement to the apartment. During the search of her apartment, SANCHEZ-GOMEZ spoke with DEA TFO J. Kennedy and Det. Mendez.

30. SANCHEZ-GOMEZ stated that she had coordinated the delivery of the two (2) kilograms of cocaine seized earlier in the day during the traffic stop in Wake County, North Carolina, as described above. SANCHEZ-GOMEZ advised that she had directed her friend, MOLINA, the driver of the Volvo SUV, to pick up the two (2) kilograms of cocaine in Greensboro, North Carolina, and deliver the narcotics to the meeting location in Wake County, North Carolina. SANCHEZ-GOMEZ advised that the deal was coordinated by her, through her boyfriend, the person identified above as the Subject.

31. Investigators did not locate any further items of interest at SANCHEZ-GOMEZ's apartment or on the 2 cell phones that SANCHEZ-GOMEZ consented to be searched.

32. On March 10, 2023, DEA TFO M. Nales transported the U.S. Currency to Loomis in Raleigh, North Carolina. for an official count and found it to be $40,500.00 in U.S. Currency. The $40,500.00 in U.S. Currency was deposited electronically to the U.S. Marshals Seized Asset Deposit Fund on March 13, 2023.

33. DEA adopted the seizure of $40,500.00 in U.S. Currency and began

administrative forfeiture proceedings. Notice of the forfeiture proceeding was published on an official government internet site (www.forfeiture.gov) from May 15, 2023, through June 13, 2023.

34. On January 7, 2024, DEA received an administrative claim to the $40,500.00 in U.S. Currency from Ingrid Jimenez-Sanchez. Law enforcement believes that Ingrid Jimenez-Sanchez may be the daughter of SANCHEZ-GOMEZ. In her claim, Ms. Jimenez-Sanchez alleges the money was from a combination of tax returns, insurance payments, a sale of a home, and proceeds gifted to her.

35. Upon receipt of the claim, DEA terminated the administrative forfeiture process and referred the seizure of the $40,500.00 in U.S. Currency to the U.S. Attorney's Office for judicial forfeiture.

## CONCLUSION

36. Based on the foregoing, there is probable cause to believe the $40,500.00 in U.S. Currency was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substance Act, 21 U.S.C. §§ 801, *et seq.*, or represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate violation of the Controlled Substances Act, and is therefore subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

This the 1st day of April, 2024.

                                                    Glen Sakamura
                                                    Task Force Officer
                                                    Drug Enforcement Administration

12

Case 1:24-cv-00290   Document 1-1   Filed 04/01/24   Page 12 of 12